UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CR-86-RLJ-DCP |
| | ) | |
| JIMMY McLAIN MOORE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Government's Emergency Motion Under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's Release Order [Doc. 37], filed on March 15, 2018, and referred [Doc. 38] to the undersigned on that same day. On August 15, 2017, the grand jury charged Defendant Moore and two others with conspiring to distribute fifty grams or more of methamphetamine from May 2016 to January 5, 2017. Defendant Moore was arrested in the Northern District of California and brought before United States Magistrate Judge Susan van Keulen for an initial appearance on March 7, 2018. The Defendant requested a detention hearing, which was held before Magistrate Judge van Keulen on March 14, 2018. Judge van Keulen released the Defendant on conditions [Exh. 1] but stayed his release for twenty-four hours to allow the Government in this district to file an appeal.

The Government filed the instant Emergency Motion, objecting to the Defendant's release due to the lack of suitable housing in either the Northern District of California or the

1

Eastern District of Tennessee, the lack of stable employment, and the danger to the community revealed by from the Defendant's criminal history and apparent drug addiction. The Government requested that the Defendant's release continue to be stayed until the Court held a hearing in this district and also that the Court revoke Judge van Keulen's release order.

That same day, United States District Judge Leon Jordan ordered [Doc. 38] that the release order be stayed pending resolution of the Emergency Motion, that the United States Marshal Service transport Defendant Moore to this district, that the transport be expedited, and that the undersigned hold a hearing on the matter of the Defendant's detention or release and prepare a report and recommendation on the issue. Defendant arrived in the district and appeared before the undersigned for an initial appearance on April 9, 2018. At that time, the Court appointed [Doc. 49] Attorney Mark E. Brown to represent the Defendant and scheduled a hearing on the Emergency Motion on April 16, 2018.[1]

On April 12, 2018, Defendant Moore responded [Doc. 51] to the Emergency Motion, arguing that the conditions imposed by Judge van Keulen, along with any additional conditions desired by the Court, are sufficient to assure his appearance and the safety of the community. He argues that the Government's concerns about his housing situation are met by him living with his sister Pamela Moore while in California and with a friend on the rare occasions when the Defendant has to appear in court in Tennessee. Electronic monitoring will restrict the Defendant to his sister's residence, and the fear of putting his family's assets at risk will act as an additional deterrent. The Defendant argues that he will work as a caregiver for his mentally

---

[1] The Court notes that the parties requested a week to prepare for the hearing and for their witnesses to be available.

2

disabled sister, a position that he has held before. He also states that he will assist his mother, who is recovering from a recent stroke. Finally, the Defendant argues that the Government's reliance on the facts of this case to show that he is a danger must be balanced with the presumption that he is innocent of these crimes until proven guilty. He maintains that the extremely restrictive conditions imposed by the Northern District of California are sufficient to assure his appearance and protect the community.

The parties appeared before the undersigned on April 16, 2018, for a hearing on the Government's Emergency Motion to revoke the Defendant's release. Assistant United States Attorney Cynthia F. Davidson appeared on behalf of the Government. Attorney Mark E. Brown represented the Defendant, who was also present. The Court heard the testimony of Postal Inspector Wendy Boles, the Defendant's daughter Jessica Moore, and the Defendant's family friend Regina Hodge. The Court also heard the arguments of counsel and some additional proffered information from defense counsel. Based upon the Pretrial Services Report prepared in the Northern District of California, a memorandum by United States Probation Officer Travis Worthington from this district, the evidence from the witnesses as well as the information proffered in the Defendant's initial detention hearing and at the April 16 hearing, the conditions imposed by Judge van Keulen, the additional conditions offered by the Defendant, and the factors listed in the Bail Reform Act, the undersigned **RECOMMENDS** that the Defendant continue to be released on conditions and that the Government's Emergency Motion be denied.

3

# I. SUMMARY OF INFORMATION OFFERED AT THE MARCH 14 DETENTION HEARING

The Defendant appeared for a detention hearing in the Northern District of California, on March 14, 2018. The Government relied on the Pretrial Services Report, which recommends the Defendant be detained. Assistant United States Attorney Marissa Harris argued that the Defendant is presumed to be both a flight risk and a danger due to the nature of the charged offense.

With regard to risk of flight, AUSA Harris argued that the Defendant lacks the financial resources to fly to and from Tennessee for court appearances, that he is transient and law enforcement had difficulty locating him for arrest, and that he has no stable employment. AUSA Harris also argued that the Defendant has a history of nonappearance, including three instances of failure to appear in Tennessee, four outstanding bench warrants, and probation violations. AUSA Harris noted the Pretrial Services Report reflects that the Defendant's children are not willing to post bond for him.

With regard to the Defendant's dangerousness, AUSA Harris argued that the charged offense involves three kilograms of methamphetamine shipped in seventeen packages and that the Defendant is alleged to have been working in concert with others to ship drugs from San Jose to Tennessee and other places. She contended that this amount of methamphetamine would subject the Defendant to a substantial jail sentence if convicted. AUSA Harris argued that the Defendant has a severe criminal history and a potential drug addiction. Accordingly, the Government moved for detention because the Defendant is a risk of nonappearance in Tennessee and is also a danger to the community.

4

Assistant Federal Public Defender Varell L. Fuller, counsel for the Defendant, argued that based on the information contained in the Pretrial Services Report, conditions exist that could mitigate any concerns about danger or failure to appear. With regard to the Defendant's flight risk, he said the allegations of prior instances of failure to appear have no dispositions and that the bench warrants, which relate to a weekend work program, have been resolved. He stated that the Defendant is not presently on probation or parole. With regard to the allegation that the Defendant was difficult to locate, Mr. Fuller argued that he has been residing intermittently with his mother, who is ill.

Mr. Fuller argued that the Defendant is from a large extended family with significant ties to that area of California and also to the charging district. He stated that several of the Defendant's family members were in the courtroom to support him, including his son Jimmy Moore, his sister Pamela Moore, his step-father, and his daughter. He noted that the Defendant's mother wanted to be there but had recently suffered a health setback and could not come. Mr. Fuller said that Jimmy Moore and Pamela Moore will sign as sureties on an unsecured appearance bond of $100,000. He also stated that Pamela Moore, who is an ICU nurse, will allow the Defendant to live with her in her home in Santa Clara and will pay for the Defendant to travel to Tennessee for court appearances. Mr. Fuller argued that the Defendant has some history of employment and that his sister Pamela would be able to assist him in securing employment in Santa Clara. He stated that the Defendant provides assistance to his older sister who has mental health issues as well as to his mother. Moreover, he contended that the Defendant has no assets with which to flee.

5

Mr. Fuller maintained that the Defendant also has ties to Tennessee, where he lived at one point in his life. He stated that the Defendant has a brother Hershel Moore, who lives in Madisonville, Tennessee, and numerous family members who live in East Tennessee. He stated that the Defendant has never traveled internationally.

With regard to the Defendant's dangerousness, Mr. Fuller argued that the Defendant's criminal history consists of misdemeanor convictions, with a single, prior felony conviction from eight years ago. He stated that the Defendant has no gang ties. Mr. Fuller argued that, although the instant offense involves controlled substances, there is no information that it involved threats of violence or firearms. He also said that the Defendant did not object to drug testing.

Magistrate Judge van Keulen questioned the proposed sureties. Pamela Moore stated that she is the Defendant's sister and that she works four days per week as an ICU nurse at a hospital. She said that she and her husband own and live in a townhouse in Santa Clara, California. She offered to let the Defendant live with them, when he is in California. She stated that up until this point, the Defendant has been caring for their mother and their sister and living with their sister in her two-bedroom apartment in San Jose. She said that the Defendant has also lived with her before, although not recently, and that he frequently comes to her house and helps her. Ms. Moore stated that she would pay for the Defendant's plane tickets and set up accommodations for him, when he needed to go to Tennessee. She said that the Defendant could stay in a motel or with family. She said that their brother Hershel Moore told her that the Defendant could stay with him.

Ms. Moore explained that their sister is mentally disabled and requires an in-home support service. She stated that she had been working with the Defendant, so that he could be compensated $1,000 monthly to provide this care. She said that the Defendant has been fingerprinted and started a background check. She stated that the responsibilities include staying with their sister and taking care of her needs, distributing her medication and conducting a pill count at night, and taking her to laboratory and doctor appointments. Ms. Moore said this position does not require medical training and that her sister is very high functioning. She stated that the Defendant could return to her residence at night. Ms. Moore said that their mother had a mild stroke and is still experiencing impaired movement. She said that their mother lives with their step-father and that they recently purchased a house but have no equity in it. She said that their mother will be staying at an inpatient therapy facility for the next three weeks.

Magistrate Judge van Keulen informed Ms. Moore that if the Defendant violated any conditions of his release or failed to appear for court, the bond would be forfeited, and Ms. Moore acknowledged her understanding of that matter. Judge van Keulen also explained this to Jimmy Moore, the Defendant's son. Both Pamela Moore and Jimmy Moore signed as sureties to the unsecured $100,000 appearance bond.

AUSA Harris responded that the Defendant has five convictions involving controlled substances, two of which are felony convictions. Additionally, she questioned the information from the sureties about where the Defendant has been living, because it is contradicted by the information from the Defendant that he has been living in this truck for the past two months. AUSA Harris also argued that an individual like the Defendant with a documented and serious drug addiction should not be providing medical care or be in charge of distributing medication.

7

She contended that the only employment available to the Defendant is that of caregiver to his sister, which is unsuitable. Finally, AUSA Harris asked that if the Defendant is released, the Court stay his release for twenty-four hours to allow the Government attorneys in Tennessee time to appeal the release order.

Magistrate Judge van Keulen found that the Defendant could be released on conditions.

## II.    SUMMARY OF INFORMATION AND TESTIMONY AT THE APRIL 16 MOTION HEARING

At the April 16 motion hearing, the Government presented the testimony of Postal Inspector Wendy Boles, who stated that employees of the Sweetwater Post Office contacted her in January 2017, regarding several suspicious packages coming from California. She said that a Monroe County detective stopped Jamie Cook, a defendant in the instant case, for a traffic violation as he was leaving the Sweetwater Post Office. A search of Cook revealed an express mail label to Defendant Moore in California. Inspector Boles testified that the package sent by Cook to Moore contained $2,400, which was payment for methamphetamine to be delivered to Gary Holder, another codefendant. She intercepted the subsequent package from Defendant Moore to Holder, and posing as a postal employee, she called Holder to notify him to pick up the package. When Holder arrived, Inspector Boles handed him the package at the counter. According to Inspector Boles, law enforcement stopped Holder for running a stop sign, after leaving the post office. A drug detection dog alerted on Holder's car. The package retrieved from Holder's car contained sixteen ounces of "ice," a pure form of methamphetamine.

8

Inspector Boles testified that Defendant Holder subsequently agreed to cooperate and gave information about Defendant Moore. Holder told her that Lonnie Moore and Jamie Cook paid him $200 to receive packages for Cook. The Monroe County Sheriff's Department recorded a telephone call from Holder to Jimmy Moore. The subscriber information for the telephone number used by Holder for the Defendant revealed an address of 4818 Kimball Hill, in Stockton, California. Holder also showed law enforcement several text messages from Defendant Moore, whom Holder listed as James Moore in his contacts. Holder said that Defendant Moore gave him a second phone number. The subscriber information for this second number revealed Jimmy Moore in California to be the subscriber. According to Inspector Boles, both addresses from the subscriber information for these two numbers were found on the express mail packages sent in this case. Based upon her investigation, Inspector Boles said seventeen packages were mailed from California to Tennessee, and they contained a total weight of over three kilograms of methamphetamine.

Inspector Boles stated that she contacted the postal inspector in California and asked for surveillance of the individual at the return address listed on the packages. The California postal inspector was not able to locate Jimmy Moore. Inspector Boles said that Defendants Cook and Holder sent two packages containing money to Defendant Moore at 1141 Lovell Court. These packages were unusual, because they stated they were to be held for pickup at the post office. The California postal inspector attempted surveillance at 1141 Lovell Court, but that location had a "for sale" sign in the yard. Also, the occupants had moved without leaving a forwarding address. The California postal inspector also checked a second address, 4818 Kimball Hill Circle, Stockton, California, which appeared as a return address on packages sent to Tennessee. According to

9

driver's license records, this was Jimmy Moore's address. However, the California postal inspector said that Jimmy Moore did not live at that address. Inspector Boles said that she checked with the California postal inspector numerous times but had no leads as to Defendant Moore's whereabouts.

Inspector Boles testified that, eventually, the United States Marshals Fugitive Task Force was contacted to find Defendant Moore. A camera recorded a license plate associated with the Defendant at a street near his sister's address. An officer responded to a suspicious vehicle with that license plate, discovered the Defendant had an active warrant, and arrested the Defendant over one year after Inspector Boles began her investigation in this case. She said that the Defendant did not resist arrest.

On cross-examination, Inspector Boles stated that the Indictment in this case was returned on August 15, 2017. She acknowledged that the postal inspector in California had contact with local law enforcement there.

The Defendant presented the testimony of his daughter Jessica Moore. Ms. Moore stated that she lives in San Francisco, California, with her fiancé. She said that in addition to herself, the Defendant had many family members who live in the Bay area, including her older brother, his wife, and their three children; her aunt and her aunt's husband; and her grandparents. She stated that her grandmother also had several sisters in the area. She said they are a close knit family. Ms. Moore said she understood that her father was facing serious narcotics charges.

Ms. Moore said that her father had lived in Northern California for five years. She said her grandmother had a stroke in March, spent several weeks in rehabilitation, and still had not regained her full range of motion. Ms. Moore testified that if her father were released, he could

help her grandparents get to appointments. Ms. Moore also testified that her Aunt Freda was mentally disabled, but high functioning. She said that Freda needed some assistance but that she did not deal well with strangers. Ms. Moore said that her father could help her Aunt Freda, his sister, and could be her paid caretaker. She said that Freda takes medication but not controlled substances. Ms. Moore said that Freda is aware of what medication she needs to take and that she can administer the medication herself. She further explained that Freda needs supervision to ensure that she takes the medication. She also stated that her father assists her older brother and his wife by taking their oldest child to the bus stop.

Ms. Moore testified that her Aunt Pam (Pamela Moore) attended her father's hearing in California and stated that the Defendant can live with her. She said her Aunt Pam had no criminal history and works as an ICU nurse. Ms. Moore said that both her Aunt Pam and her brother signed as sureties for her father's bond. She assured the Court that her family would report any violations of her father's conditions of release. She said that the family had placed a lot on the line for the Defendant. She said that the Defendant would return to Tennessee for hearings and would not do anything to put his family at risk. She said that she, her brother, and her Aunt Pam would pay for the Defendant's flights to Tennessee. Ms. Moore stated that the Defendant could stay with a family friend while in Tennessee. She said that the referenced friend was in the courtroom and would make sure the Defendant makes his court appearances.

On cross-examination, Ms. Moore testified that prior to his arrest, her father was living with her grandmother and her Aunt Freda. She stated that she had regular contact with her father. She had heard that the Defendant told law enforcement he was living in his truck. She explained that her grandmother had come to live with her Aunt Freda for a while and that her father

11

had given his room to her grandmother. She said that her grandmother lived in Stockton, California, and that her Aunt Freda lived in San Jose, California, but that she did not know their street addresses from memory.

Ms. Moore denied that her father had struggled with drugs, but she acknowledged that he had prior drug convictions. She said that she was aware of his arrest in 2016 for possession of controlled substances and drug paraphernalia. She said that she had paid $600 for her roundtrip ticket to come to this hearing but that plane tickets for the Defendant to travel to court appearances would not be that expensive, if the family had more notice. She said that while she was willing to be a surety for her father, she did not have the means to do so because she was presently pursuing medical school. She stated that she thought that her brother and aunt had secured the Defendant's bond with their homes. She said that she would have signed an unsecured bond.

With regard to employment, Ms. Moore testified that her father had worked as a truck driver in the 1990's through the 2000's. When he moved to California, he began doing odd jobs, while looking for other work. She said that the Defendant did jobs for her Aunt Pam and was getting a certificate to be able to care for her Aunt Freda. She acknowledged that the Defendant did not have money to travel back and forth to Tennessee, but she said that his family was willing to bear that burden for him.

On redirect examination, Ms. Moore agreed that when she learned about the motion hearing from defense counsel last week, he told her not to come. However, she came because she cares about her father. She stated that the Defendant has his family behind him.

Ms. Regina Hodge testified that she lives at 519 Isball Road, Madisonville, Tennessee. She said that she is a friend of the Defendant's mother and talks with her frequently.

12

She said that she has an extra bedroom and that the Defendant can stay with her when he is in Tennessee. She said that she would report any violations of the conditions of his release.

Defense counsel provided the conditions of release imposed by Judge van Keulen as Exhibit 1 to the hearing. Defense counsel also proffered that the Defendant's daughter had obtained a cellular telephone for the Defendant to use, so that he could keep in touch with the family and counsel. Mr. Brown said the Defendant's family confirmed that the Defendant had completed the background check needed to be a caregiver for his sister and that the Defendant had been approved for that position. Mr. Brown said that the Defendant did not have a valid driver's license but said that his family is willing to drive him places. He stated that the Defendant's brother Hershel Moore was in the courtroom to support him but that Mr. Moore could not provide a place for the Defendant to stay when in Tennessee, due to a medical condition.

AUSA Davidson said that she had no objection to the Court relying on the Pretrial Services Report.

### III. POSITIONS OF THE PARTIES

At the April 16 hearing, AUSA Davidson argued that no conditions of release could assure the Defendant's appearance or the safety of the community. With respect to his risk of nonappearance, she stated that law enforcement was looking for Defendant Moore for over a year, that he had many violations of probation, and that he had twice failed to appear in court in Monroe County. She contended that the Defendant himself reported living out of his truck and that he had not held a job in years. She argued that although the Defendant's family appeared to support him now, they were not there to support him when he was homeless. She also observed that the

13

Defendant's son and sister were not willing to secure his bond with their homes, which indicates that they question whether he will comply with the conditions of release.

With regard to the Defendant's dangerousness, AUSA Davidson argued that the evidence presented by Inspector Boles links him to three kilograms of methamphetamine. She said that electronic monitoring will not stop the Defendant from mailing packages containing drugs. She also argued that there is substantial evidence that the Defendant had a prior drug addiction. She asserted that his criminal history contains numerous drug-related convictions, including a 1994 conviction for possession of a controlled substance for sale, a 2009 conviction for manufacturing methamphetamine, 2014 convictions for possession of controlled substances and resisting arrest, and 2016 charges for possession of controlled substances and drug paraphernalia. AUSA Davidson argued that based upon this evidence, no conditions can assure the safety of the community or the Defendant's appearance.

Mr. Brown argued that the Defendant has rebutted the presumption of dangerousness and has offered conditions that address all of the Government's concerns. First, he argued that the fact that law enforcement could not locate the Defendant did not mean that the Defendant is a flight risk. He contended that the only evidence that the Government has raised with regard to the Defendant's dangerousness is the instant charge, as to which the Defendant is presumed innocent. Moreover, the danger the Government posits—that the Defendant would continue to mail drugs to Tennessee— is ridiculous in light of the fact that the Defendant is facing federal charges for that alleged conduct and would forfeit his family's assets if he did so.

Mr. Brown maintained that in contrast to the Government's arguments, the Defendant has proposed conditions that would assure the safety of the community and his

14

appearance as required. The Defendant has a stable place to live with his sister, who signed as a surety on his bond. Defendant also has a stable place to stay in Tennessee. Mr. Brown proffered that both the Defendant's sister Pamela Moore and his friend Regina Hodge are willing to serve as third-party custodians. The Defendant can work for his sister or can seek other employment. Mr. Brown argued that the conditions imposed by the Northern District of California, along with the additional conditions proposed, will insure the Defendant's appearance as required.

## IV.     STANDARD OF REVIEW

The Bail Reform Act of 1984 provides that individuals accused of a federal crime must be released on personal recognizance or on an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If release on personal recognizance or an unsecured appearance bond will not reasonably assure the person's appearance or the safety of the community, the judicial officer shall order that the individual be released on conditions. 18 U.S.C. § 3142(c). However, upon the government's motion, the judicial officer may detain a person charged with certain serious federal crimes or who poses a "serious risk" of flight, witness intimidation, or obstruction of justice, if the judge finds, after a detention hearing, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f) & -(e). At the detention hearing, the government must prove by a preponderance of the evidence that the individual is a flight risk and/or by clear and convincing evidence that the person is a danger to the community or others. *See* 18 U.S.C. § 3142(f).

15

In the instant case, the Government moved for detention, and Magistrate Judge van Keulen held a detention hearing, because Defendant Moore is charged with an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more. *See* 18 U.S.C. § 3142(f)(1)(C). Due to the crime charged, a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A). In this respect, the Indictment provides probable cause to believe that the Defendant has committed an offense under the Controlled Substances Act for which he faces a maximum sentence of ten years or more. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption). This presumption places the burden of production with the Defendant, while the Government retains the burden of persuasion. *Stone*, 608 F.3d at 945. To satisfy his burden of production, the defendant must present at least some evidence that he is not a danger or a flight risk. *Id.* Even when the defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors, because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

"If a person is ordered released by a magistrate judge . . ., the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain the defendant *de novo*.[2] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D.

---

[2] Although a magistrate judge cannot review another magistrate judge's decision to release a

16

Ohio 2000) (holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that *de novo* review is appropriate); *see also United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful de novo review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075, *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order must be "determined promptly." 18 U.S.C. § 3145(a).

## V.    ANALYSIS

As discussed above, the Court finds that the rebuttable presumption in 18 U.S.C. § 3142(e)(3)(A) applies in this case, because the Defendant is charged with conspiracy to distribute methamphetamine, which is a violation of the Controlled Substances Act for which the maximum potential penalty is ten years or more. The Court also finds the Defendant has rebutted the presumption by providing evidence that he is not a flight risk or a danger. With regard to risk of flight, the Defendant offered the testimony of his daughter Jessica Moore that he is not transient and that prior to his arrest, he was living with his mother and disabled sister. With regard to both flight risk and potential danger to the community, the Defendant offered the testimony of his sister

---

defendant, a district judge may refer the government's motion to revoke a release order to a magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26-KKC-REW, 2017 WL 5711438, *2-3 (E.D. Ky Nov. 17, 2017) (Wier, MJ), *adopted by,* No. 5:17-CR-26-KKC-REW, 2017 WL 5710443 (E.D. Ky Nov. 27, 2017) (Caldwell,CJ). The district judge will ultimately conduct a *de novo* review of the detention issue by reviewing the report and recommendation, which considers all of the evidence offered to that point. *Id.* at *3.

Pamela Moore that he has a place to live and a job opportunity caring for his disabled sister. Defense counsel also proffered that both Pamela Moore and Regina Hodge are willing to serve as third-party custodians to supervise the Defendant's compliance with conditions, including the condition that he not commit other crimes. Accordingly, the Court finds that the Defendant has rebutted the presumption and carried his burden of production. However, the Court must still consider the presumption that detention is appropriate, along with the other factors. *See Stone*, 608 F.3d at 945.

The Court now turns to "whether there are conditions of release that will reasonably assure" Defendant Moore's appearance at court proceedings and the safety of others and of the community. 18 U.S.C. § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense, (2) the weight of the evidence against Defendant Moore, (3) Defendant Moore's history and characteristics, and (4) the nature and seriousness of the danger to the community posed by his release. 18 U.S.C. § 3142(g).

First, the nature and circumstances of the offense weigh in favor of detention because the charged offense involves a controlled substance. 18 U.S.C. §3142(g)(1). Defendant Moore is charged with conspiring to distribute fifty grams or more of methamphetamine over an eight-month period. Inspector Boles testified that the Defendant and his cohorts distributed three kilograms of methamphetamine through the United States mail.

With regard to the second factor, the Court initially observes that the charged offense is among those crimes for which Congress has deemed the offender particularly dangerous or particularly likely to flee. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010)

18

(noting that Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee). In this case, the weight of the evidence of the Defendant's dangerousness is significant because the Defendant is charged with engaging in a conspiracy to distribute methamphetamine. In this regard, the Court notes that drug trafficking is inherently dangerous. *United States v. Hernandez*, 2002 WL 1377911, *2 (E.D. Tenn. Feb. 27, 2002) (Edgar, J.) (holding that drug trafficking is inherently dangerous). However, beyond this presumption of dangerousness, the record contains no evidence that the alleged drug trafficking in the instant case was conducted in a particularly dangerous manner. For example, there is no evidence that firearms were used or threats were made. In its Emergency Motion, the Government argues that by "mailing large quantities of crystal methamphetamine across the country," the Defendant endangered not only the communities involved, but also the postal workers, including the mail carriers, who delivered the packages. [Doc. 37, p.2] However, the Government does not elaborate on its argument leaving the Court to speculation.

Moreover, with regard to the weight of the evidence of the Defendant's dangerousness, the Court finds that the Defendant has six prior drug-related convictions: A 1994 felony conviction for possession of a controlled substance, a 2009 felony conviction for promoting the manufacture of methamphetamine,[3] 2014 misdemeanor convictions for the possession of

---

[3] The Government characterizes this conviction as manufacturing methamphetamine. However, the Pretrial Services Report lists this offense as "Promote to Manufacture Methamphetamine" and states that it occurred in Monroe County, Tennessee. Under Tennessee law, promoting the manufacture of methamphetamine is a separate offense from manufacturing methamphetamine. *Compare* Tenn. Code Ann. § 39-17-433 *with* Tenn. Code Ann. § 39-17-434. Tennessee Code Annotated § 39-17-433 provides in pertinent part:

> (a) It is an offense for a person to promote methamphetamine manufacture. A person promotes methamphetamine manufacture who:

19

controlled substances and drug paraphernalia (two convictions for each). Aside from these convictions, the Defendant has five additional drug-related arrests: A 1990 arrest for possession of a controlled substance for resale, a 1995 arrest for possession of drug paraphernalia, a 1997 arrest for manufacturing a controlled substance,[4] a 2006 arrest for possession of legend drugs, and February 2016 arrest for possession of a controlled substance and drug paraphernalia. This chronology indicates a history of drug-related crimes spanning twenty-four years. Finally, the Defendant has arrests involving weapons in 1997 (felon in possession of a firearm), 2006 (possession of a weapon with intent to go armed), and 2014 (carrying a switchblade). The Court

------

(1) Sells, purchases, acquires, or delivers any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use;

(2) Purchases or possesses more than nine (9) grams of an immediate methamphetamine precursor with the intent to manufacture methamphetamine or deliver the precursor to another person whom they know intends to manufacture methamphetamine, or with reckless disregard of the person's intent; or

(3) Permits a person to use any structure or real property that the defendant owns or has control of, knowing that the person intends to use the structure to manufacture methamphetamine, or with reckless disregard of the person's intent.

Nevertheless, the Court agrees that even the promotion of manufacturing methamphetamine is dangerous, particularly if it occurs as proscribed in subsection (a)(3).

[4] The disposition of this offense, contained in the Pretrial Services Report, suggests that it may have been reduced to possession of ephedrine with the intent to manufacture methamphetamine before being dismissed.

20

notes that while it may consider arrests as well as convictions in assessing the Defendant's dangerousness, the arrests warrant less weight. *Tolbert*, 2017 WL 6003075, at *5. The Court finds that the significant evidence of the Defendant's dangerousness weighs in favor of detention.

Conversely, the Court finds that the weight of the evidence that the Defendant presents a flight risk is low. *See* 18 U.S.C. §3142(g)(2). The only information indicating the Defendant Moore might fail to appear are three failure to appear notations from 2008, all of which were either dismissed or have no disposition noted; an alleged probation violation in 2009, which was dismissed with costs assessed to the state; and an alleged violation of community corrections in 2010, for which the disposition is also not noted. The Government also argues that the Defendant is a flight risk because, at the time of his arrest in this case, he reported living out of his truck and bouncing between various residences and because law enforcement could not locate him for approximately seven months. The Defendant responds that it is not his fault that law enforcement could not locate him, that he was not being evasive, and that he should not be penalized for his lack of a stable residence, particularly when he has two stable places to reside while on release, one in California and one in Tennessee. The undersigned agrees with the Defendant that the presence of two known and stable residences mitigate the minimal evidence that he presents a flight risk, particularly in the absence of any evidence that he was attempting to avoid law enforcement during the seven-month period between the return of the Indictment and his arrest in this case.

The third factor examines the Defendant's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol

abuse, criminal history, and record concerning appearance at court proceedings," along with evidence of whether the Defendant was on conditions of release at the time of the current offense. 18 U.S.C. § 3242(g)(3)(A)-(B). The Court finds significant evidence of the Defendant's strong family ties, which support release. The Defendant has many family members (his mother, two sisters, son, daughter-in-law, daughter, and three grandchildren), who reside in the Bay area, in which he was living prior to this arrest and to which he plans to return. His sister Pamela Moore, who has signed as a surety for a $100,000 bond, will allow the Defendant to live with her, and she is willing to be a third-party custodian for the Defendant. His son has also signed as a surety on the $100,000 bond. The Defendant has provided care for his mentally disabled sister in the past and seeks to do so again, as part-time employment. According to the Pretrial Services Report, the Defendant's mother was also willing to sign as a surety and to offer any equity in her home. Unfortunately, his mother suffered a stroke and was not able to attend the Defendant's March 14 detention hearing.[5] The Defendant's daughter traveled from San Francisco in order to testify in support of her father's release on April 16 and has procured a cellular telephone for him to stay in touch with family and the Probation Office, if released. Although the Government questions the willingness of these family members to support the Defendant and/or act as sureties when he was first arrested, the Court finds that they appeared on his behalf both at the initial detention hearing and on April 16 and they signed as sureties. Ultimately, the actions of the Defendant's family members speak louder than any initial hesitation they may have expressed to the pretrial services officer in California.

---

[5] The Court notes that Pamela Moore testified that her mother has no equity in her new home.

Moreover, in addition to being a long-time resident of the Bay area, the Defendant has lived in and has community ties to this district as well. He has a brother, Hershel Moore, who lives in Madisonville, Tennessee. The Defendant speaks with his brother on a monthly basis, and Mr. Hershel Moore appeared to support the Defendant at the April 16 hearing. Contrary to the conditions imposed by Magistrate Judge van Keulen, Mr. Hershel Moore cannot allow the Defendant to live with him, when the Defendant is in Tennessee, due to a medical condition. However, the Defendant's family friend Ms. Regina Hodge appeared at the April 16 hearing and offered to allow the Defendant to use a second bedroom in her home when he is in Tennessee for court appearances. Ms. Hodge is also willing to act as a third-party custodian for the Defendant in Tennessee.

Finally, with regard to the Defendant's character and past conduct, the Court notes that while the Defendant's long history of drug convictions and arrests casts a shadow over this sub-factor, the record contains evidence that the Defendant helps his family. He has assisted with the care of his disabled sister. He helps his son and daughter-in-law with transportation for his grandchildren. His sister Pamela Moore testified at his detention hearing in California that the Defendant frequently helps her. Finally, the Defendant intends to help his mother, who is recovering from a stroke. Although the Defendant has limited financial resources, his sister, son, and daughter are willing to pay for his travel between the Northern District of California and this district for Court appearances. Moreover, as noted above, his daughter will provide him a cellular telephone.

The Defendant's employment history is not stellar. However, his daughter testified that he worked as a truck driver for a number of years. She stated that since losing this job, he has

23

performed construction-type jobs and has trained to be a caregiver for his mentally disabled sister (her aunt). The Court has some reservations about this potential employment, because it involves the Defendant counting and administering his sister's medications. The Defendant's daughter testified that the Defendant's sister does not take any controlled substances. Finally, the Court has no evidence that the Defendant has any mental health issues. The Court finds all of the above weighs in favor of the Defendant's release.

On the other hand, two aspects of the Defendant's history and characteristics support detention. The Defendant has a lengthy criminal history. In addition to the drug-related convictions discussed above, the Defendant has misdemeanor convictions for the unauthorized sale or use of fireworks in 1986, for reckless driving in 1996, and for obstructing or resisting an officer in 2014. Additionally, the Defendant has four arrests or warrants for driving without a license or on a suspended license. The Pretrial Services report states that the Defendant's driver's license is expired. This is of particular concern to the Court because the Defendant assists his family with transportation and intends to work for his disabled sister by providing transportation to medical appointments. In response to the Court's concern, Mr. Brown stated that the Defendant's family is willing to drive him where he needs to go. The Court finds the Defendant's lengthy and prolific criminal history weighs in favor of detention. The Court also finds that in light of the number of appointments the Defendant will potentially have for drug testing, drug treatment, and meetings with his supervising probation officer and to attend work as a caregiver for his disabled sister, there is a serious question about the feasibility of his family driving him everywhere, especially given that they all work, attend school, or are unable to drive themselves.

Secondly, the record contains some evidence that the Defendant has a substance abuse problem. On the advice of counsel, Defendant declined to provide any information to the pretrial services officer in California about any history of controlled substance abuse or treatment. The Defendant's mother reported that she did not know whether the Defendant had a history of substance abuse or treatment. She stated that she believed the Defendant could benefit from substance abuse treatment. The Defendant's son told the pretrial services officer in California that he believed his father may have a history of using illicit substances, given his criminal history, but he was not aware of whether the Defendant was currently using illegal controlled substances. He also believes the Defendant could benefit from treatment. Magistrate Judge van Keulen imposed a condition that the Defendant submit to drug testing and receive drug treatment, if required by his probation officer. The Court finds that this condition will alleviate concerns surrounding the Defendant's use of controlled substances.

Moreover, as noted above, the Defendant's criminal history contains some minimal evidence of failure to appear for Court proceedings, all of which is alleged to have occurred over eight years ago. Considering the Defendant's history and characteristics as a whole, the Court finds that it weighs in favor of release. *See* 18 U.S.C. §3142(g)(3).

Finally, the Court examines the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release. 18 U.S.C. §3142(g)(4). The Government again points to the charged offense and the Defendant's drug-related criminal history to argue that the nature and seriousness of the danger he presents is high. AUSA Davidson argued that none of the conditions imposed by Magistrate Judge van Keulen or the additional conditions considered by this Court would prevent the Defendant from continuing to traffic in controlled

25

substances through the mail. The Court respectfully disagrees. The Court finds that electronic monitoring and home detention would restrict the Defendant to his sister's house, except when attending certain approved appointments or work. The Defendant's sister Pamela Moore is willing to serve as a third-party custodian and to supervise the Defendant's compliance with conditions, including the condition that he not engage in further crimes. Ms. Hodge is willing to serve as a third-party custodian and supervise him when he is in this district for court appearances. The Court finds that these conditions are sufficient to provide a reasonable degree of assurance that the Defendant does not commit drug trafficking crimes while on release.

The other potential danger posed by the Defendant's release stems from the Defendant's use of controlled substances. The Court finds that this danger can be alleviated by drug testing and, if appropriate, drug treatment. Accordingly, the Court finds that while the Defendant's release poses some danger that he would continue to use drugs, the Court finds the fourth factor to be neutral because the potential danger can be controlled with conditions.

In summary, the Court finds that the two factors relating to the nature of the offense and the Defendant's criminal history, along with consideration of the presumption, support a finding that the Defendant is a danger to the community. However, the Defendant's strong family ties and family support, both in the Northern District of California and in this district, along with the availability of two third-party custodians and the $100,000 appearance bond, tip the balance in favor of release. The Court recommends the continuation of the following strict conditions imposed by Magistrate Judge van Keulen: The Defendant's travel is restricted to the Northern District of California and the Eastern District of Tennessee. The Defendant must report as required to his supervising pretrial services officer. The Defendant must surrender all passports and visas.

The Defendant may not possess firearms or dangerous weapons. He must participate in drug testing and treatment as required by his pretrial services officer. He may not use alcohol excessively, and he cannot use any narcotic or controlled substance without a legal prescription. The Defendant must maintain or actively seek employment. He must avoid contact with his codefendants. The Defendant shall submit to electronic monitoring. The Defendant must reside with his sister Pamela Moore, while in California. The Defendant shall post a $100,000 unsecured appearance bond with his sister and son signing as sureties. As discussed above, the Court finds that these conditions would mitigate the danger posed by the Defendant. Also, based upon the testimony of the Defendant's daughter about the Defendant's relationship with other family members, the Court finds the consequence of costing his sister and son to pay his $100,000 bond, if he fails to comply with his conditions, provides a serious incentive for the Defendant to comply.

In addition to the above conditions imposed by Magistrate Judge van Keulen, the Court recommends the following additional conditions: The Defendant shall reside with Ms. Regina Hodge, rather than his brother Hershel Moore, when he is in this district. Both Pamela Moore and Ms. Hodge shall serve as third-party custodians for the Defendant. The Defendant shall submit to home detention, rather than a curfew, in the home of his sister Pamela Moore. Finally, the Court would impose a special condition that the Defendant not drive, unless he renews his driver's license. The Court finds that these additional conditions, along with those imposed by Magistrate Judge van Keulen, will reasonably assure the appearance of the Defendant as required and the safety of another person or the community. 18 U.S.C. §3142(e). Accordingly, the Court recommends that the Defendant be released on conditions pending his trial.

27

## VI.    CONCLUSION

The Court has carefully considered the Pretrial Services Report from the Northern District of California; the April 9, 2018 memorandum from United States Probation Officer Travis Worthington; the recording of the March 14, 2018 detention hearing in the Northern District of California; the Rule 5 paperwork from that district [Doc. 39], including the March 14, 2018 Conditions of Release and Appearance; the testimony, proffers, and argument from the April 16, 2018 motion hearing; the rebuttable presumption; and the § 3142(g) factors.  For the reasons discussed herein, the undersigned **RECOMMENDS** that the Defendant be released on the conditions listed above.

Due to the need to determine this issue promptly, any objections to this report and recommendation must be served and filed on or before **April 23, 2018**.  Any response to objections must be filed on or before **April 25, 2018**.

Respectfully submitted,

*Debra C. Poplin*

Debra C. Poplin
United States Magistrate Judge

28