UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 3:17-CR-086 |
| ) | |
| JIMMY MCLAIN MOORE, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. On August 24, 2018, this case came before the undersigned for an evidentiary hearing on Defendant Jimmy McLain Moore's Motion to Suppress [Doc. 69], filed on June 15, 2018. Assistant United States Attorney Cynthia F. Davidson appeared on behalf of the Government. Attorney Mark E. Brown appeared for Defendant Moore. The Court has considered the testimony of the witnesses, the exhibits, and the arguments of the parties in their filings. For the reasons set out below, the undersigned finds that Defendant Moore did not have a legitimate expectation of privacy in the contents of the subject package to establish standing to assert Fourth Amendment objections to its search. Alternatively, the Court finds that the warrantless search of the package was supported by lawful consent and a showing of probable cause. The Court recommends that Defendant's motion be denied.

## I. FACTS

Based on the testimony and evidence presented at the suppression hearing on August 24, 2018, the Court makes the following findings of fact.

Over a period of several months leading up to January 2017, Officer Dennis Graham ("Officer Graham") of the Vonore Police Department was involved in the investigation of Codefendant Jamie Cook ("Cook") for distribution of methamphetamine. During the investigation, Officer Graham learned from confidential informants that Cook was receiving methamphetamine and sending currency through the mail, i.e. the United States Postal Service ("USPS"). On January 3, 2017, Officer Graham observed Cook drive away from a post office in Madisonville, Tennessee. Knowing that Cook did not have a driver's license, Officer Graham conducted a traffic stop of Cook. Officer Graham testified that Cook consented to a search of his person and his vehicle. Officer Graham located a USPS Priority Mail Express mailing label in Cook's jacket pocket that was addressed to Defendant Moore in Concord, California, from Cook in Madisonville, Tennessee, and was dated 1/3/17. [Ex. 1]. Cook waived his *Miranda* rights and told Officer Graham that the mailing label was for U.S. currency that he had mailed to Defendant Moore for methamphetamine. Cook told Officer Graham that Defendant Moore would be mailing methamphetamine back within the next couple of days.[1] Realizing that USPS was involved, Officer Graham contacted Postal Inspector Wendy Boles ("Inspector Boles"), who agreed to assist him in locating the package that Cook was expecting from Defendant Moore. Officer Graham and Inspector Boles planned to set up a controlled delivery of the package.

---

[1] Officer Graham testified that the methamphetamine was supposed to arrive the next day, but it actually arrived two days later.

2

Case 3:17-cr-00086-KAC-DCP  Document 98  Filed 09/11/18  Page 2 of 12  PageID #: 527

Inspector Boles testified that she became involved in the investigation when she was initially notified by the Sweetwater Post Office that Officer Graham was seeking assistance. In her discussions with the Sweetwater Postmaster, Inspector Boles discovered that an address in Sweetwater was receiving multiple packages from California. Inspector Boles stated that Officer Graham shared the details of his investigation with her, including his interactions with Cook and Cook's cooperation with law enforcement. Inspector Boles specifically researched and discovered several additional mailings to and from California, including a package from California addressed to Codefendant Gary Holder ("Holder") in Sweetwater, Tennessee. Officer Graham asked Inspector Boles to locate the package from Cook to Defendant Moore [*see* Ex. 1] and the inbound package from California to Holder [*see* Ex. 2]. Inspector Boles was not able to locate the package from Cook to Defendant Moore but was successful in locating the inbound package addressed to Holder (hereinafter "the Package"). Once Inspector Boles found the Package, she notified Officer Graham, and they met to discuss the plan for a controlled delivery of the Package. On January 5, 2017, Inspector Boles traveled to the Sweetwater Post Office pursuant to the devised plan and contacted Holder through the phone number on the Package's mailing label [Ex. 2]. Posing as a postal employee, Inspector Boles asked Holder if he would like to pick up the package at the Sweetwater Post Office. When Holder arrived at the post office, Inspector Boles, still posing as a postal employee, checked Holder's driver's license to identify him. The name and address on Holder's driver's license matched that of the addressee on the Package's mailing label. Inspector Boles personally handed the Package over the counter to Holder, and Holder left the post office with the Package. Inspector Boles testified that according to postal regulations, when she handed the Package to Holder, the Package then became Holder's personal property.

When Officer Graham received notification from Inspector Boles that the controlled delivery of the Package to Holder had taken place, he established surveillance of Holder. During surveillance, Officer Graham witnessed Holder commit a traffic violation and initiated a traffic stop. Holder gave consent for a search of his vehicle, including a drug detection dog sniff search.[2] The dog alerted on the passenger side of the vehicle where the Package was located. Upon being advised of the positive dog alert, Holder consented to the search of the Package. The mailing label on the Package was addressed to Holder in Sweetwater, Tennessee, from Mark Pumfall[3] in Stockton, California, and bore a delivery date of January 5, 2017. [Ex. 2]. Holder consented to officers opening the package whereupon they discovered two bags of crystal substance believed to be methamphetamine. Both bags were covered in axel grease.[4] The traffic stop and subsequent search of Holder's vehicle was recorded on Officer Graham's work cellular telephone. Holder further consented to a search of his home [*see* Ex. 4], which revealed baggies with grease on them and boxes similar to the Package in his vehicle, indicating to Officer Graham that other packages had been opened at Holder's residence.

## II. POSITION OF THE PARTIES

Defendant Moore is charged in a single count Indictment filed on August 15, 2017, with conspiring with Codefendants Cook and Holder to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 846, 841(a)(1) and 841(b)(1)(A) [Doc. 1].

---

[2] Officer Graham testified that the dog was properly trained and certified, and Defendant did not challenge its credentials.
[3] The Court observes that the last name of the Package's sender is somewhat illegible but appears to be "Pumfall," [*see* Exh. 2].
[4] Officer Graham testified that from his experience in narcotics enforcement investigations, he was aware that a person may put something in axel grease in an attempt to hide the smell from drug detection dogs.

4

Defendant Moore's suppression motion arises out of the January 5, 2017 search of Holder's vehicle, and specifically, he challenges the search of the Package that was located in Holder's vehicle and moves to suppress the drugs recovered from the Package. Defendant Moore contends that he held an expectation of privacy in the Package and that Cook, not Holder, was the intended recipient of the Package. Defendant Moore maintains that while Holder could consent to a search of his own vehicle, he had no common authority with the sender to give consent to search the Package. [Doc. 69, p. 4]. Despite Holder being named as the addressee on the Package's mailing label, Defendant Moore asserts that "Holder was nothing more than a middle man getting paid by the ultimate recipient, Cook" [Doc. 70 p. 7], and therefore, law enforcement could not search the Package lawfully without a warrant. He further argues that all evidence gathered after the search of the Package, including Holder's January 5, 2017 statement and screen shots from Holder's cellular telephone, must be suppressed as to him (Defendant Moore) under the fruit of the poisonous tree doctrine.

In response, the government argues that the search was lawful and does not violate the Fourth Amendment because Holder consented to the search and because the canine sniff, which detected the presence of an illegal substance in the vehicle, provided the requisite probable cause for the search of the vehicle and the Package. The government further argues, that in any event, Officer Graham had probable to search the Package based upon his ongoing investigation.

## III. ANALYSIS

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. The fundamental purpose of the Fourth Amendment "is to safeguard the privacy and security of

5

individuals against arbitrary invasions by government officials." *Camara v. Municipal Ct. of San Francisco,* 387 U.S. 523, 528 (1967). Though "this fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer," there are "exceptions to the general rule that a warrant must be secured before a search is undertaken." *California v. Carney*, 471 U.S. 386, 390 (1985). One such exception is a consensual search. "An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." *United States v. Jenkins,* 92 F.3d 430, 436 (6th Cir. 1996) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973)).

Another exception to the warrant requirement is the automobile exception. This exception allows law enforcement officers to search a vehicle without a warrant if the vehicle is "readily mobile" and they have probable cause to believe that it contains evidence of a crime. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (observing that the automobile exception stems from the mobility of an automobile, as well as the reduced expectation of privacy stemming from the fact that automobiles are highly regulated). A positive alert by a properly trained dog is sufficient to establish probable cause to search a vehicle for the presence of a controlled substance. *United States v. Torres–Ramos,* 536 F.3d 542, 554 (6th Cir. 2008); *United States v. Diaz,* 25 F.3d 392, 393–94 (6th Cir. 1994); *United States v. Knox,* 839 F.2d 285, 294 n.4 (6th Cir. 1988). Moreover, such probable cause stemming from a dog alert extends to "every part of the vehicle and all containers found therein in which the object of the search could be hidden." *United States v. Winters*, 782 F.3d 289, 304 (6th Cir. 2015) (*citing United States v. Stubblefield,* 682 F.2d 502, 507 (6th Cir. 2012)).

Because the Fourth Amendment serves to protect people from unreasonable government intrusions into their legitimate expectations of privacy, individuals seeking protection under the

6

Fourth Amendment must establish a reasonable expectation of privacy in the invaded place. *Katz v. United States,* 389 U.S. 347, 353 (1967). Whether the defendant enjoys a reasonable expectation of privacy does not turn solely upon the defendant's subjective belief but also depends upon (1) the defendant's interest in and control of the place search, (2) any measures the defendant took to ensure privacy, and (3) whether society recognizes the defendant's expectation as reasonable. *United States v. Padin*, 787 F.2d 1071, 1075–76 (6th Cir. 1986), *cert. denied*, 479 U.S. 823 (1986).

Defendant Moore argues that he maintained a reasonable expectation of privacy in the Package located in Holder's vehicle and that his rights under the Fourth Amendment were violated because the Package was searched without a warrant. The Court will consider this issue, along with Defendant Moore's standing to challenge the search.

### A. Standing

As an initial matter, the Court must determine whether Defendant Moore has a recognized privacy interest in the Package or what is commonly known as "standing" to contest the search. *See United States v. Ellis*, 125 F. App'x 691, 695 (6th Cir. 2005) (holding that it is "incumbent" upon the court to determine whether a party had "standing to challenge the constitutionality of the officers' action[,]" even when the issue of standing is not raised by the parties). "It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." *Unites States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). "A legitimate expectation of privacy incorporates two elements: first, whether the defendant 'exhibited an actual (subjective) expectation of privacy,' and second, whether the defendant's subjective expectation is 'one that society is prepared to recognize as reasonable.'" *United States v. Knox*, 839 F.2d 285, 293 (6th Cir. 1988) (citing *United States v. Tolbert*, 692 F.2d 1041, 1044 (6th Cir. 1982), *cert. denied,* 464

7

U.S. 933 (1983) (quoting *Katz v. United States*, 389 U.S. 347 (1967)). "Fourth Amendment rights are personal and may not be asserted vicariously." *Id.* (citing *Rakas v. Illinois*, 439 U.S. 128, 133 (1978)).

Here, Defendant Moore asserts that he had a reasonable expectation of privacy in the Package that was located in Holder's vehicle, and he maintains that his expectation of privacy in the Package continued until the Package reached the intended recipient, Cook. At the suppression hearing, the mailing label of the Package was entered into evidence. [Ex. 2]. The Court observes that Defendant Moore is not named as either the sender or the addressee on the Package. The sender named on the Package is "Mark Pumfall," and the name of the addressee is "Gary Holder." Generally, a defendant who is neither the sender nor the addressee lacks a privacy right in the package and, thus, has no standing to make a Fourth Amendment challenge. *United States v. Pierce,* 959 F.2d 1297, 1303 (5th Cir. 1992); *United States v. Koenig,* 856 F.2d 843, 846 (7th Cir. 1988); *see United States v. Smith,* 39 F.3d 1143, 1145 (11th Cir. 1994); *United States v. Daniel,* 982 F.2d 146, 149 (5th Cir. 1993); *United States v. Givens,* 733 F.2d 339, 341 (4th Cir. 1984). Because Defendant Moore did not put his name on the Package, he did not exhibit any public expression of an expectation of privacy in the Package and effectively disassociated himself from the Package. *See United States v. Wood*, 6 F. Supp. 2d 1213, 1224 (D. Kan. 1998) (holding that one who conceals his interest in contents by failing to disclose his identity on the face of the package may be deemed to have repudiated his interest). Therefore, the Court finds that Defendant Moore has failed to establish a legitimate expectation of privacy in the Package, and thus, lacks standing to challenge the search of the Package.[5]

---

[5] The Court notes that the Sixth Circuit has never reached the issue of whether a defendant relinquishes his privacy interest by using false information to mail a package. *See U.S. v. Williams*, No. 10–20357–STA–tmp, 2013 WL 310562, at *2 (W.D. Tenn. Jan. 25, 2013). In this case,

8

Case 3:17-cr-00086-KAC-DCP   Document 98   Filed 09/11/18   Page 8 of 12   PageID #: 533

Even if Defendant Moore had established an expectation of privacy in the Package upon its mailing, such expectation would have ended once the Package was delivered to Holder, the actual addressee of the Package. *See United States v. King,* 55 F.3d 1193, 1196 (6th Cir. 1995) (holding that the sender's expectation of privacy ordinarily terminates upon delivery). Defendant's assertion that Cook, and not Holder, was the intended recipient of the Package is irrelevant as Defendant Moore cannot vicariously assert violations of the Fourth Amendment rights of others, including Holder or Cook. *United States v. French*, 974 F.2d 687, 693 (6th Cir. 1992), *cert. denied,* 506 U.S. 106 (1993). Accordingly, Defendant Moore has failed to establish any basis for standing to assert Fourth Amendment objections to the search of the Package. Nevertheless, the Court also observes that the Government did not object to Defendant Moore's standing to contest the search. In light of this fact, the Court will also address Defendant Moore's arguments for suppression of the evidence, in the event that the District Court disagrees that Defendant Moore lacks a legitimate privacy interest in the Package.

**B. Consent**

Defendant Moore contends that the search of the Package is invalid because it was not authorized by a warrant. As set out above, while the general rule is that a warrant must be secured before a search is undertaken, there are exceptions to the rule, one being a consensual search. "An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." *United States v. Jenkins,* 92 F.3d 430, 436 (6th Cir. 1996) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973)).

---

however, Defendant Moore did not establish that the sender's name on the Package's mailing label, "Gary Pumfall," was a fictitious name serving as the alter ego of Defendant Moore, and therefore Court will not analyze the issue of standing on this basis.

In this case, Officer Graham testified that once Inspector Boles notified him that the controlled delivery of the Package to Holder had taken place, he set up surveillance on Holder's vehicle. After witnessing a traffic violation, Officer Graham stopped Holder, and during the stop, Holder consented to a search of the vehicle. A police officer may legally stop a car when he has probable cause to believe that a civil traffic violation has occurred. *United States v. Sanford,* 476 F.3d 391, 394 (6th Cir. 2007). Thus, the officer's subjective intent for executing the stop is irrelevant. *See Whren v. United States,* 517 U.S. 806, 813 (1996); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (holding that a traffic "stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop"), *cert. denied*, 513 U.S. 828 (1994).

Defendant Moore concedes that Holder had authority to consent to the search of his vehicle, but he asserts that Holder "was not the intended recipient of the parcel [and therefore], he lacked common authority to consent to a search." [Doc. 69, p. 4]. It is undisputed that Holder was the named recipient of the Package, and Inspector Boles verified that the identification that Holder presented when he took delivery of the Package matched the name and address on the mailing label. The officers' "subjective" belief that the Package was sent by Defendant Moore, based upon the prior statements of Cook, do not alter Holder's common authority to consent to the search of his vehicle or the Package addressed to him. Further, it is undisputed that the Package was located in Holder's vehicle at the time he consented to the search. "'[O]rdinarily[,]' . . . 'general consent [to a search] permits the opening of closed but unlocked containers found in the place as to which consent was given' even 'where officers did not tell the suspect the object of their search.'" *United States v. Canipe*, 569 F.3d 597, 605 (6th Cir. 2009) (quoting *United States v. Gant*, 112 F.3d 239,

243 (6th Cir. 1997)) (second alteration in original). Thus, the Court finds that Holder's consent to the search of the vehicle also permitted the search of the Package contained within the vehicle.

## C. Probable Cause

Finally, the Court further finds that the canine sniff of Holder's vehicle supports a probable cause finding in this case. A positive indication by a properly-trained police dog that leads to the seizure of a controlled substance is sufficient to establish probable cause to search a vehicle and its contents for the presence of a controlled substance. *United States v. Hudson*, 405 F.3d 425, 441 (6th Cir. 2005); *United States v. Torres-Ramos*, 536 F.3d 542 (6th Cir. 2008).

In this case, Officer Graham testified that the dog conducting the sniff alerted on the passenger side of Holder's vehicle where the Package was located. He further testified that the dog was properly trained and certified. The dog's positive alert therefore provided probable cause for the search of the vehicle and the Package located in it for the presence of contraband.

In addition to the positive dog alert, the totality of the following circumstances provided ample probable cause for the officers to search the package: the prior information from Cook that Moore would be mailing a package of drugs from California to him via Holder; Investigator Boles' corroboration of the information from Cook by finding a package from California addressed to Holder that arrived within the anticipated timeframe; Holder picking up the Package; and Investigator Boles' confirmation of Holder's identification when he took delivery of the Package. Thus, the Court finds that even if Holder lacked the authority to consent to the search of the Package, the officers had probable cause to conduct a warrantless search of the Package based upon the automobile exception to the warrant requirement.

11

## IV. CONCLUSION

After carefully considering the evidence, the parties' filings, and the relevant legal authorities, the Court finds no basis to suppress the evidence seized from the Package. Accordingly, the undersigned recommends that Defendant Moore's Motion to Suppress [**Doc. 69**] be **DENIED**.[6]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).