UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA )
)
v. ) No. 3:17-CR-086
)
JIMMY MCLAIN MOORE

## **MEMORANDUM AND ORDER**

The defendant is charged with conspiring to distribute methamphetamine. He has filed a motion to suppress the contents of a package (hereinafter, "the Package") recovered from the vehicle of codefendant Gary Dean Holder, "along with any other evidence subsequent to the illegal search" of the Package. [Doc. 69]. The United States has responded in opposition to the motion. [Doc. 72].

Magistrate Judge Debra Poplin conducted an evidentiary hearing and heard arguments on August 24, 2018. Now before the Court is the magistrate judge's September 11, 2018 Report and Recommendation ("R&R"), recommending that the suppression motion be denied. [Doc. 98].

The defendant objects to the R&R. [Doc. 101]. The United States has again responded in opposition. [Doc. 103]. The Court has thoroughly reviewed the R&R, the suppression motion, the parties' briefing, a transcript of the evidentiary hearing, and the various exhibits, including video of the traffic stop at issue. For the reasons that follow, the defendant's objections will be overruled.

# I.

## *Standard of Review*

A district court is both statutorily and constitutionally required to conduct a *de novo* review of a magistrate judge's report and recommendation. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." *See id.*; 28 U.S.C. § 636(b). A district court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

# II.

## *Factual Background*

The R&R accurately sets forth the pertinent facts as follows:

Over a period of several months leading up to January 2017, Officer Dennis Graham ("Officer Graham") of the Vonore Police Department was involved in the investigation of Codefendant Jamie Cook ("Cook") for distribution of methamphetamine. During the investigation, Officer Graham learned from confidential informants that Cook was receiving methamphetamine and sending currency through the mail, i.e. the United States Postal Service ("USPS"). On January 3, 2017, Officer Graham observed Cook drive away from a post office in Madisonville, Tennessee. Knowing that Cook did not have a driver's license, Officer Graham conducted a traffic stop of Cook. Officer Graham testified that Cook consented to a search of his person and his vehicle. Officer Graham located a USPS Priority Mail Express mailing label in Cook's jacket pocket that was addressed to Defendant Moore in Concord, California, from Cook in Madisonville, Tennessee, and was dated 1/3/17. [Ex. 1]. Cook waived his *Miranda* rights and told Officer Graham that the mailing label was for U.S. currency that he had mailed to Defendant Moore for methamphetamine. Cook told Officer Graham that Defendant Moore would be mailing methamphetamine back within the next couple of days. Realizing that USPS was involved, Officer Graham

contacted Postal Inspector Wendy Boles ("Inspector Boles"), who agreed to assist him in locating the package that Cook was expecting from Defendant Moore. Officer Graham and Inspector Boles planned to set up a controlled delivery of the package.

Inspector Boles testified that she became involved in the investigation when she was initially notified by the Sweetwater Post Office that Officer Graham was seeking assistance. In her discussions with the Sweetwater Postmaster, Inspector Boles discovered that an address in Sweetwater was receiving multiple packages from California. Inspector Boles stated that Officer Graham shared the details of his investigation with her, including his interactions with Cook and Cook's cooperation with law enforcement. Inspector Boles specifically researched and discovered several additional mailings to and from California, including a package from California addressed to Codefendant Gary Holder ("Holder") in Sweetwater, Tennessee. Officer Graham asked Inspector Boles to locate the package from Cook to Defendant Moore [*see* Ex. 1] and the inbound package from California to Holder [*see* Ex. 2]. Inspector Boles was not able to locate the package from Cook to Defendant Moore but was successful in locating the inbound package addressed to Holder (hereinafter "the Package"). Once Inspector Boles found the Package, she notified Officer Graham, and they met to discuss the plan for a controlled delivery of the Package. On January 5, 2017, Inspector Boles traveled to the Sweetwater Post Office pursuant to the devised plan and contacted Holder through the phone number on the Package's mailing label [Ex. 2]. Posing as a postal employee, Inspector Boles asked Holder if he would like to pick up the package at the Sweetwater Post Office. When Holder arrived at the post office, Inspector Boles, still posing as a postal employee, checked Holder's driver's license to identify him. The name and address on Holder's driver's license matched that of the addressee on the Package's mailing label. Inspector Boles personally handed the Package over the counter to Holder, and Holder left the post office with the Package. Inspector Boles testified that according to postal regulations, when she handed the Package to Holder, the Package then became Holder's personal property.

When Officer Graham received notification from Inspector Boles that the controlled delivery of the Package to Holder had taken place, he established surveillance of Holder. During surveillance, Officer Graham witnessed Holder commit a traffic violation and initiated a traffic stop. Holder gave consent for a search of his vehicle, including a drug detection dog sniff search. The dog alerted on the passenger side of the vehicle where the Package was located. Upon being advised of the positive dog alert, Holder

consented to the search of the Package. The mailing label on the Package was addressed to Holder in Sweetwater, Tennessee, from Mark Pumfall in Stockton, California, and bore a delivery date of January 5, 2017. [Ex. 2]. Holder consented to officers opening the package whereupon they discovered two bags of crystal substance believed to be methamphetamine. Both bags were covered in axel grease. The traffic stop and subsequent search of Holder's vehicle was recorded on Officer Graham's work cellular telephone. Holder further consented to a search of his home [*see* Ex. 4] [sic], which revealed baggies with grease on them and boxes similar to the Package in his vehicle, indicating to Officer Graham that other packages had been opened at Holder's residence.

[Doc. 98, p. 2-4] (footnotes omitted). The defendant concedes, for purposes of the instant motion and objections only, that he—not "Mark Pumfall"—was the true sender of the Package. [Doc. 70, p.1; doc. 101, p.3].

In recommending denial of the defendant's motion, Magistrate Judge Poplin concluded that:

> 1. The defendant has not shown that he had a legitimate expectation of privacy in the Package, and thus he lacks standing to challenge the search.
>
> 2. Holder had authority to consent to the search of the Package, and therefore the search was valid.
>
> 3. The search was also validly supported by probable cause in the form of the canine alert, based on the automobile exception to the Fourth Amendment's warrant requirement.

III.

*Analysis*

The defendant presents three distinct objections to the R&R. First, he maintains that he indeed has standing to challenge the Package's search. Second, the defendant objects that Holder lacked authority to consent to that search. Lastly, the defendant

4

objects that the drug dog did not establish probable cause to search "his [the defendant's] person … thousands of miles away" from the traffic stop.

A. Holder's Authority to Consent

The Court begins its analysis by addressing the second objection. The defendant's argument is based on his contention that codefendant Cook was the true "intended recipient" of the Package. According to that theory, Holder was a mere maildrop used by the defendant and Cook for their methamphetamine transactions. This contention, however, remains an unproven premise. *See United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986) (A defendant seeking to suppress evidence bears the initial burden of production and persuasion); *see also United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

Officer Graham testified that Cook was receiving boxes of methamphetamine in the mail. Officer Graham testified that Cook told him that he (Cook) was expecting one such box from the defendant on January 4 or 5, 2017. Officer Graham testified that Holder had that box in his car when the traffic stop occurred. From this evidence, the Court finds that Cook indeed had at least some interest in the Package's contents, but that does not mean that Holder did not have an interest as well.

It is true that, in the search video, Holder is heard offering a largely unconvincing denial of any knowledge of the Package's contents (because "two or three guys uses [sic] my address"). The credibility of Holder's statements is undermined by the

defendant's own argument that Holder subsequently admitted that he had been receiving "the methamphetamine" from the defendant. [Doc. 69, p. 3-4].[1] Holder's denials are further undermined by Officer Graham's testimony that a search of Holder's home revealed "[b]aggies that had grease on them, also other boxes similar to the one that was located in [Holder's] vehicle," leading Officer Graham to conclude that "packages were opened at [Holder's] residence." Holder's denials are not believed.

Also, while there is evidence that Cook mailed money to the defendant just two days before the Package arrived [doc. 89, ex. 1], there is evidence that Holder did too. [Doc. 89, ex. 4]. In sum, the defendant has not met his burden of proving that the Package was entirely intended for Cook and that Holder was an unknowing dupe. It appears true that Cook had some interest in the Package, but Holder's absolute lack of interest in the Package has simply not been proven.

Even if that were not the case, the magistrate judge was absolutely correct in concluding that Holder had authority to consent to a search of the Package. Quite simply, *the defendant addressed the Package to Holder and then mailed it to him.* Holder was notified of the Package's arrival, drove to the post office, and took possession of the Package that had been *addressed and mailed to him*. Thus, Holder was the intended recipient of the Package and, for the reasons discussed herein, had at

---

[1] The defendant quotes from an alleged police report. [Doc. 69, p. 3-4]. Defendant quotes from another alleged police report in which Cook is said to have admitted that the defendant would mail methamphetamine to Holder, which Cook would then pick up. [Doc. 69, p. 2-3]. The defendant did not, however, enter either of these purported reports into evidence.

least common authority to consent to the search. The defendant's second objection will be overruled.

B. Probable Cause to Search Defendant's Person

Next, the defendant offers caselaw citations pertaining to searches of *the person* to argue that the canine alert could not have provided probable cause *as to the defendant* "thousands of miles away." [Doc. 101, p.5]. At a minimum, this argument borders on the frivolous and likely does not merit review. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

Regardless, it was not the defendant who was searched. Instead, the automobile of codefendant Holder was searched, with Holder's consent. "A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994). The defendant does not challenge the reliability of the drug dog in this case, nor does he contest the validity or duration of the traffic stop. His third objection will be overruled.

C. Defendant's Standing to Challenge the Search

The defendant's remaining objection—that he indeed has standing to challenge the search of the Package—merits little discussion in light of the Court's conclusion that the search was valid based on both consent and probable case. Suffice it to say that if one sends mail to another person, "the sender's expectation of privacy ordinarily terminates upon delivery." *United States v. King*, 55 F.3d 1193, 1196 (6th Cir. 1995).

IV.

*Conclusion*

As provided herein, the defendant's objections [doc. 101] to the Report and Recommendation [doc. 98] are **OVERRULED**. The defendant's suppression motion [doc. 69] is **DENIED**.

This case remains set for trial on November 13, 2018. The plea deadline remains October 12, 2018.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge