UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:17-CR-086 |
| | ) | |
| JIMMY MCLAIN MOORE | ) | |

**MEMORANDUM AND ORDER**

The single count indictment in this case charged defendant Jimmy McLain Moore, along with codefendants Jamie William Cook and Gary Dean Holder, with conspiring to distribute 50 grams or more of methamphetamine. Codefendants Cook and Holder entered guilty pleas. Following a two-day jury trial, defendant Moore was found guilty. Sentencing is scheduled for April 8, 2019.

The probation office has prepared and disclosed a Presentence Investigation Report [doc. 195] to which the defendant has lodged two substantive objections [doc. 202]. The United States has responded [doc. 211], conceding that the second objection should be sustained but arguing that the first should be overruled.

The probation office subsequently issued a Revised Presentence Investigation Report ("PSR") [doc. 223] and PSR Addendum [doc. 222] reflecting the success of the defendant's second objection. For the reasons that follow, the defendant's first objection will now be overruled.

I.

*Background and Authority*

Defendant Moore's jury determined that the amount of methamphetamine involved in this conspiracy was 50 grams or more, the highest option presented on the Court's verdict form. *See* 21 U.S.C. § 841(b). Based on a summary of the testimony and evidence presented at trial, paragraph 11 of the PSR deems the defendant responsible for 2.55390648 kilograms of methamphetamine resulting in a base offense level of 36 pursuant to United States Sentencing Commission Guidelines Manual ("U.S.S.G.") § 2D1.1. *See* U.S.S.G. § 2D1.1(c)(2) (assigning a base offense level of 36 for crimes involving at least 1.5, but less than 4.5, kilograms of actual methamphetamine).

The defendant objects that he should instead be held accountable for only 442 grams, corresponding to the weight of the sole batch of methamphetamine actually seized in this case. He argues that the prosecution "could not prove beyond a reasonable doubt" that any of the other packages that the defendant mailed to his co-conspirators in fact contained methamphetamine. He further contends that "the source of the mathematical calculations in the PSR is unclear."

"When, as here, the precise quantity of drugs involved is uncertain, the district court must err on the side of caution and may only hold a defendant accountable for a specific quantity for which he is more likely than not actually responsible. . . . An estimate will suffice as long as it is supported by a preponderance of the evidence." *United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013) (quotation and citations

omitted). The jury's finding of 50 grams or more "is not dispositive of this issue because there is no higher threshold to charge under the Controlled Substances Act, 21 U.S.C. § 841(b)," even though the guidelines recognize several quantity ranges higher than 50 grams of methamphetamine. *United States v. Rios*, 830 F.3d 403, 436 (6th Cir. 2016). "The jury's precise findings may be a starting point, but '[a] defendant is responsible for all drug quantities that are included within the scope of his 'relevant conduct.'" *Id.* (quoting *United States v. Gill*, 348 F.3d 147, 149 (6th Cir. 2003)).

II.

*Analysis*

A. Proof

The Court summarized much of the pertinent trial proof in a prior memorandum and order.

> . . . The jurors heard the testimony of Holder, Postal Clerk Wally Racelis, Officer Dennis Graham, and Postal Inspector Wendy Boles regarding the January 2017 seizure of a package containing approximately one pound of methamphetamine mailed to Holder from California. The sender of that package identified himself as "Mark Pumfall" on the address label. To be certain, that is not the defendant's name. However, the return address on the package matches the defendant's California driver's license, and the listed phone number belonged to the defendant.
>
> The jury heard and saw extensive proof of other mailings back and forth between the defendant, Cook, and Holder. Some packages to East Tennessee bore the defendant's name as the sender, and several had a return address and phone number matching the defendant, as shown by evidence gleaned from Sprint records, the defendant's driver's license, and texts found on Holder's phone. Further, one of those phone numbers was used by codefendant Cook to call the defendant in the presence of Officer Graham.

> Holder testified that the defendant would mail methamphetamine to Holder's address for Cook and others to pick up. Holder did not see the contents of every package, but the contents he did see always included methamphetamine. Holder testified that he and Cook would, in turn, mail payments to the defendant for the methamphetamine. Holder further testified that he knew the defendant was the mailer of these packages because of phone conversations between himself and the defendant. Packing labels from prior mailings were found at Holder's residence.
>
> Further, phone conversations between the defendant and Cook evidenced a practice of mailing *something* to and from California and East Tennessee. These calls also showed a familiarity between the two men.
>
> Viewing this evidence in the light most favorable to the government, a rational jury could have found beyond a reasonable doubt that the defendant conspired to distribute methamphetamine with Holder and Cook . . . .
>
> The government in this case offered proof of at least 17 packages mailed from California to Cook or Holder between April 2016 and January 2017, several of which bore the defendant's name and/or a return address and phone number associated with him. The government also introduced proof of at least 15 mailings from East Tennessee to the defendant (by name, and/or to an address associated with him) between September 2016 and January 2017. Holder testified that such mailings contained payment to the defendant for methamphetamine, and that the defendant sometimes fronted him methamphetamine for resale. Additionally, the Court again notes the familiarity, pattern, and practice evident in the phone calls between Cook and the defendant. This evidence shows a longstanding relationship with established methods of payment, standardized transactions, and mutual trust between the defendant and his confederates. The Court also observes that the package intercepted in January 2017 contained approximately one pound of methamphetamine. That is far from a user quantity, further evidencing the defendant's knowledge that the methamphetamine would be further distributed by Cook and Holder.

[Doc. 186, p. 3-5] (footnote omitted).

In its prior memorandum, the Court further observed that Holder's testimony was "sufficiently credible, and . . . consistent with and corroborated by the remaining

evidence presented by the government." [Doc. 186, p. 6]. Additionally, the Postal Service documentary records introduced through Inspector Boles were comprehensive and compelling.

Having seen and heard all the proof at trial, the Court easily finds, by a preponderance of the evidence, that each of the 17 packages mailed from defendant Moore to his co-conspirators indeed contained methamphetamine. The defendant's ongoing suggestion that these mailings contained something other than methamphetamine is simply incredible. The Court accordingly rejects the defendant's contention that his PSR should only hold him accountable for no more than the 442 grams of methamphetamine seized on January 5, 2017.

B. Calculation of Drug Quantity

The Court next turns to the defendant's argument "that the source of the mathematical calculations in the PSR is unclear." The probation office's calculations are in fact explained at PSR paragraph 11. It is apparent that those calculations rely on the government's trial exhibit 68D, which is a chart summarizing the Postal Service mailings (and their weights in ounces) from the defendant to Holder and Cook. The Court has carefully compared exhibit 68D to the testimony of Inspector Boles, and the Court finds the exhibit to be an accurate summary of the evidence presented.

The package seized on January 5, 2017, weighed 2.69 pounds, or 43.04 ounces. At trial, the parties stipulated that the methamphetamine inside that package weighed 442 grams, or 15.59 ounces. Therefore, the methamphetamine constituted 36.22% of the total

package weight (15.59 ÷ 43.04 = .3622). Exhibit 68D applies a similar ratio to the total package weight of all 17 mailings from the defendant to Cook and Holder (281 ounces) and extrapolates that the 17 packages cumulatively contained 103.97 ounces, or 2.91116 kilograms, of methamphetamine.[1]

It is again noted that the defendant is challenging the base offense level in his PSR. That base offense level is 36, corresponding to at least 1.5 but less than 4.5 kilograms of methamphetamine. *See* USSG § 2D1.1(c)(2). PSR paragraph 11 only holds the defendant accountable for the 14 packages mailed to Holder (and not the three packages mailed to Cook) and applies a ratio similar to that used in exhibit 68D to hold the defendant accountable for 2.55390648 kilograms of methamphetamine. The PSR's methodology is sound, but the Court finds by a preponderance of the evidence that the defendant should also be held accountable for the three packages sent to Cook. As such, the Court is satisfied that the defendant should be held accountable for 2.84059 kilograms of methamphetamine, well above guideline 2D1.1(c)(2)'s threshold of only 1.5 kilograms.

Nonetheless, the Court remains mindful that its drug quantity findings must be conservative. Where an exact quantity of drugs cannot be determined, an estimate based

[1] The Court's review of the evidence generates slightly more conservative numbers than does exhibit 68D, and the Court will utilize its own numbers herein because they are more favorable to the defendant. First, as stated above, the Court finds that methamphetamine constituted 36.22% of the total January 5, 2017 package weight. By contrast, exhibit 68D uses a higher figure of 37%. Next, according to the Court's understanding of Inspector Boles' testimony, the individual weights of the 17 packages totaled 276.64 ounces, as opposed to the 281 ounces listed in exhibit 68D. The Court's more conservative weight (276.64 ounces) multiplied by the Court's more conservative methamphetamine ratio (36.22%) results in total methamphetamine weight of 100.199 ounces, or 2.84059 kilograms, which is slightly less than exhibit 68D's computation.

on physical or testimonial evidence will suffice, but the court should err on the side of caution in making that estimate. *See United States v. Begley*, 602 F. App'x 622, 627 (6th Cir. 2015). The evidence supporting the court's finding "must have a minimal level of reliability beyond mere allegation." *Id.*

Exhibit 68D has an appropriate level of reliability. It is reasonable to expect that the methamphetamine-to-total-package weight ratio for each of the defendant's mailings was similar to the package seized on January 5, 2017. But, for purposes of the instant objection, close similarity is not even necessary. The Court could reduce the weight ratio by one half for the remaining 16 packages and the defendant would still be responsible for a methamphetamine quantity exceeding guideline 2D1.1(c)(2)'s 1.5 kilogram threshold.

By the Court's calculation, the 16 packages mailed by the defendant to Cook and Holder from April to December, 2016, weighed 233.6 ounces.[2] If the Court were to apply a ratio of only 18.11% (only half of the 36.22% applied above), the methamphetamine weight for these 16 packages would still be 42.30 ounces, or 1.19918 kilograms. That sum plus the stipulated 442 grams found in the January 2017 mailing would equal 1.64118 kilograms—which is obviously more than 1.5 kilograms—still placing the defendant at a base offense level of 36. In other words, applying a method of calculation just half as restrictive as that used by the government still leads to the same result.

---

[2] This, again, is a more conservative number than what is found in exhibit 68D (238 ounces).

Lastly, the Court notes that codefendant Jamie Cook—in his plea agreement—admitted responsibility for at least 1.5 kilograms of actual methamphetamine obtained "for resale from his California supplier." [Doc. 40, ¶ 3(a)-(c)]. Having presided over the trial of this case, the Court is satisfied that Cook's "California supplier" was indeed defendant Jimmy Moore.

III.

*Conclusion*

As discussed herein, the Court is satisfied by a preponderance of the evidence that the defendant is responsible for the distribution of at least 1.5 kilograms of actual methamphetamine. The PSR's drug quantity finding is based on a conservative summary of the proof that this Court heard and found credible.

The defendant's objection to his base offense level [doc. 202] is accordingly **OVERRULED**. Sentencing remains set for Monday, April 8, 2019, at 1:30 p.m. in Knoxville.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge