UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:17-CR-086 |
| ) | |
| JIMMY MCLAIN MOORE ) | |

## MEMORANDUM AND ORDER

In 2018, a jury found the defendant guilty of conspiring to distribute 50 grams or more of methamphetamine. [Doc. 155]. A subsequent counseled "Motion by the Defendant Jimmy McLain Moore for Judgment of Acquittal or in the Alternative for a New Trial" pursuant to Federal Rules of Criminal Procedure 29 and 33 [doc. 167] was denied. [Doc. 186]. The defendant's conviction and sentence were affirmed on appeal. [Doc. 309].

Now before the Court is the defendant's counseled and renewed Rule 33 motion for new trial. [Doc. 364].[1] The United States has responded in opposition to the motion for new trial [doc. 368], and the defendant has submitted a reply [doc. 372].

The motion has been fully briefed and the Court finds no need for an evidentiary hearing. For the reasons that follow, the motion will be denied.

---

[1] Also pending are the defendant's *pro se* motion for home confinement or compassionate release [doc. 346], his counseled motion to vacate under 28 U.S.C. § 2255 [doc. 358], his amended counseled motion to vacate [doc. 359], and his counseled amended motion for compassionate release [doc. 369]. Each of those filings will be addressed in due course by separate orders of the Court. A prior counseled motion to unseal numerous filings on the docket of codefendant Jamie William Cook [doc. 365] was granted in small part but otherwise denied [docs. 388, 390].

# I.

## *Background*

This Court and the Sixth Circuit Court of Appeals have previously summarized the background and trial of this case. In its memorandum and order denying the defendant's motion for judgment of acquittal and new trial, this Court set out the following summary:

> In this case—considering the evidence in the light most favorable to the government—a rational jury could have found the essential elements of count one beyond a reasonable doubt. The jurors heard the testimony of [codefendant Gary] Holder, Postal Clerk Wally Racelis, Officer Dennis Graham, and Postal Inspector Wendy Boles regarding the January 2017 seizure of a package containing approximately one pound of methamphetamine mailed to Holder from California. The sender of that package identified himself as "Mark Pumfall" on the address label. To be certain, that is not the defendant's name. However, the return address on the package matches the defendant's California driver's license, and the listed phone number belonged to the defendant.
>
> The jury heard and saw extensive proof of other mailings back and forth between the defendant, Cook, and Holder. Some packages to East Tennessee bore the defendant's name as the sender, and several had a return address and phone number matching the defendant, as shown by evidence gleaned from Sprint records, the defendant's driver's license, and texts found on Holder's phone. Further, one of those phone numbers was used by codefendant Cook to call the defendant in the presence of Officer Graham.
>
> Holder testified that the defendant would mail methamphetamine to Holder's address for Cook and others to pick up. Holder did not see the contents of every package, but the contents he did see always included methamphetamine. Holder testified that he and Cook would, in turn, mail payments to the defendant for the methamphetamine. Holder further testified that he knew the defendant was the mailer of these packages because of phone conversations between himself and the defendant. Packing labels from prior mailings were found at Holder's residence.
>
> Further, phone conversations between the defendant and Cook evidenced a practice of mailing *something* to and from California and East Tennessee. These calls also showed a familiarity between the two men.

2

Case 3:17-cr-00086-RLJ-DCP   Document 394   Filed 11/08/22   Page 2 of 12   PageID #: 6348

> Viewing this evidence in the light most favorable to the government, a rational jury could have found beyond a reasonable doubt that the defendant conspired to distribute methamphetamine with Holder and Cook, and that the defendant's relationship with those two men was more than one of mere buyer and seller. The defendant is of course correct that "a buyer-seller relationship alone is insufficient to [establish] a conspiracy because mere sales do not prove the existence of the agreement that must exist for there to be a conspiracy." *Deitz*, 577 F.3d at 680 (citation and quotation omitted)....
>
> The government in this case offered proof of at least 17 packages mailed from California to Cook or Holder between April 2016 and January 2017, several of which bore the defendant's name and/or a return address and phone number associated with him. The government also introduced proof of at least 15 mailings from East Tennessee to the defendant (by name, and/or to an address associated with him) between September 2016 and January 2017. Holder testified that such mailings contained payment to the defendant for methamphetamine, and that the defendant sometimes fronted him methamphetamine for resale. Additionally, the Court again notes the familiarity, pattern, and practice evident in the phone calls between Cook and the defendant. This evidence shows a longstanding relationship with established methods of payment, standardized transactions, and mutual trust between the defendant and his confederates. The Court also observes that the package intercepted in January 2017 contained approximately one pound of methamphetamine. That is far from a user quantity, further evidencing the defendant's knowledge that the methamphetamine would be further distributed by Cook and Holder.

[Doc. 186, p. 3-5] (footnote omitted) (emphasis in original).

In affirming this Court, the Sixth Circuit summarized the background of this case as follows:

> In January 2017, a sheriff's deputy [Officer Graham] in Monroe County, Tennessee, pulled over a suspected methamphetamine dealer, Jamie Cook, for a traffic violation. With Cook's consent, the deputy searched Cook's pockets and found a postal receipt showing that Cook had mailed a package to Jimmy Moore in California. Cook said the package contained $2,400, which he had sent to Moore in exchange for a package of methamphetamine that would be arriving soon. With Cook's cooperation, investigators then listened in on several calls in which Cook and Moore discussed (albeit cryptically) plans to ship methamphetamine. Those plans included a package

of methamphetamine that Moore had recently mailed to Gary Holder, who would pass its contents on to Cook.

The package arrived a few days later. Postal Inspector Wendy Boles gave the package to Holder after checking his identification. A sheriff's deputy promptly pulled Holder over as he drove away. A drug-detection dog alerted to the presence of drugs inside the car. Holder consented to a search of the car and the package. Inside the package, the deputy found, wrapped in bags of grease, 442 grams of methamphetamine.

Holder then consented to a search of his home, where the police found more bags of grease along with labels from earlier packages. Holder also showed the police text messages from Moore, which contained tracking numbers for packages sent previously and instructions as to how Holder should send cash back to Moore. Boles determined from postal records that, over the previous year, Moore or someone with his address or phone number had sent at least 17 packages to Holder or Cook.

[Doc. 309, p. 2-3].

II.

*Issues Presented*

The defendant moves for a new trial based on four strains of purported newly discovered and probative evidence.

First, the defendant argues that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny by not disclosing "evidence related to Officer Graham's employment" which "casts serious doubt on the credibility of Officer Graham." According to the defendant, "Officer Graham's personnel record reflect[s] improper police conduct and other issues surrounding his leaving the Monroe County Sheriff's Office." Specifically, the defendant cites a 2013 Employee Warning Notice based on Officer Graham leaving the scene of an accident and not responding to his radio or phone, along

4

with 2015 emergency room instructions documenting that Officer Graham had been in a motor vehicle accident. [Doc. 372, Exs. 2, 3].

Next, the defendant argues that the prosecution again violated *Brady* and its progeny by not disclosing the existence of an alternate suspect. The defendant cites a May 2017 press release regarding the indictment of a different "James Moore" of Stockton, California, for heroin distribution. [Case No. 3:21-CV-342, Doc. 2, Ex. 1].

The defendant next discusses various post-trial documents filed by, or pertaining to, codefendant Cook. According to the defendant, had his jury known about Cook's mental and physical health issues, addiction, and "recantation," it "likely would have changed the outcome at trial."

Lastly, the defendant cites his post-trial medical records. He argues that "medical evidence relating to Mr. Moore's addiction and other issues relevant to diminished mental capacity," if known at the time of trial, "could have provided support for a diminished capacity defense."

III.

*Pertinent Authority*

Federal Rule of Criminal Procedure 33(a) provides, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). The instant motion was filed within that time frame. [Docs. 155, 364].

5

Generally, courts utilize a four-part test when evaluating Rule 33 motions based on newly discovered evidence.

> In making a motion for a new trial based on newly discovered evidence the defendant must show that the evidence
>
> (1) was discovered only after trial,
>
> (2) could not have been discovered earlier with due diligence,
>
> (3) is material and not merely cumulative or impeaching, and
>
> (4) would likely produce an acquittal if the case were retried.

*United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982). However, "the standard is different when a motion for new trial is based on a *Brady* violation." *United States v. Hanna*, 661 F.3d 271, 298 (6th Cir. 2011). "[T]he *Barlow* test is modified in cases involving the suppression of evidence by the prosecution, and in such cases the defendant 'should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal.'" *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986) (quoting *United States v. Agurs*, 427 U.S. 97, 111 (1976)).

In *Brady*, the Supreme Court "held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing and quoting *Brady*, 373 U.S. at 87). The Supreme Court has "since held that the duty to disclose such evidence is applicable even though there has been no request by the accused." *Id.* (citing *Agurs*, 427

6

Case 3:17-cr-00086-RLJ-DCP   Document 394   Filed 11/08/22   Page 6 of 12   PageID #: 6352

U.S. at 97).

> To establish a true *Brady* violation, Defendant carries the burden of showing: 1) that the government suppressed evidence, either willfully or inadvertently; 2) that such evidence was favorable to the defense, either because it is exculpatory or because it is impeaching; and 3) that the suppressed evidence was material (*i.e.,* that prejudice ensued). A deprivation of due process occurs where all three elements are present.
>
> With regard to the last element, the Supreme Court has instructed that evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*United States v. Dado*, 759 F.3d 550, 559-60 (6th Cir. 2014) (citations and quotations omitted).

IV.

*Analysis*

The Court will now address the defendant's arguments in turn.

A. Officer Graham

As mentioned, the defendant cites a 2013 Employee Warning Notice based on Officer Graham's "le[aving] scene of accident" and not being reachable by radio or phone for 30 minutes. [Doc. 372, Ex. 2].[2] The defendant also cites evidence that Officer Graham

---

[2] The Employee Warning Notice also contains Officer Graham's explanation for his conduct – that he had to move his car to block in the vehicle he was pursuing, and that he was temporarily unreachable because he was pursuing a suspect who was "running in [the] woods."

7

was in a car accident in 2015. [*Id.*, Ex. 3]. The defendant further alludes to Officer Graham's testimony that certain packing materials related to this case were destroyed *after* he left the Monroe County Sheriffs Department, and the defendant notes a letter in which Cook is highly critical of Officer Graham.[3]

Presuming, *arguendo*, that the prosecution should have unearthed and disclosed the cited Monroe County documents, the defendant has not shown the materiality of that evidence. Again, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Dado*, 759 F.3d at 560.

The defendant argues that the cited records are "highly relevant in light of the government's reliance on Officer Graham to relay undocumented information and uncorroborated statements from Jamie Cook." However, Officer Graham's ultimate role at trial was to provide background for, and to some extent interpret, the phone calls between the defendant and Cook that were played for the jury. Those calls largely speak for themselves, and there has been no denial that this defendant was in fact the voice at the other end of those recordings.[4]

---

[3] On these last two points, as will be discussed further below, the defendant and his prior attorney were aware of these issues at or prior to trial. The evidence is therefore not new, and it cannot form the basis for a new trial.

[4] Additionally, based on prior phone calls to and from a phone number registered *to this defendant*, Holder identified *this defendant's* voice on the recorded Cook calls. [Doc. 258, p. 36, 39-41, 127].

8

The defendant's suggestion is that there was something false about the recorded calls, either that Officer Graham unduly influenced Cook, or that Cook was lying. As the Court has previously observed, however, there was a "familiarity, pattern, and practice evident in the phone calls between Cook and the defendant. This evidence shows a longstanding relationship with established methods of payment, standardized transactions, and mutual trust between the defendant and his confederates." [Doc. 186]. If Cook was lying on those calls, or otherwise trying to "set up" the defendant, why was the defendant playing along at every turn? To the point, the defendant and Cook discussed the mailing of a package from California to Holder. That package then arrived and in fact contained a pound of methamphetamine.

The recorded calls persuasively speak for themselves, in no small part due to the defendant's own contributions. The defendant has not shown a "reasonable probability" that the strong evidentiary value of those calls would have been diminished by evidence of Officer Graham's prior traffic accident and disputed pursuit techniques, such that the result of his trial would have been different.

B. <u>James Moore of Stockton California Indicted for Heroin Distribution</u>

Next, the defendant faults the prosecution for not disclosing that a Stockton, California, man with the similar name of "James Moore" was charged in the United States District Court in the Eastern District of California with having, in April 2017, distributed heroin within 1,000 feet of a school.

9

The defendant cites no authority under which the prosecution is required to scour and disclose other courts' criminal dockets. Moreover, the defendant has not shown the materiality of this evidence.

It is true that the instant defendant (Jimmy McLain Moore) and James Moore have similar names, were both residents of Stockton, California, and were both charged with controlled substance distribution, but the similarities end there. James Moore was an in-person heroin distributor. To accept that James Moore was possibly also the person repeatedly mailing boxes of methamphetamine to this district would require one to accept that he did so using Jimmy McLain Moore's addresses and phone numbers. It would require one to accept that James Moore somehow surreptitiously and successfully used Jimmy McLain Moore's mailing addresses to receive multi-thousand-dollar drug payments time and time again. It would require one to disregard recorded evidence of Jimmy McLain Moore discussing the mailing of a package to East Tennessee—a package which, again, then arrived containing a pound of methamphetamine.

The defendant's argument is speculation at its very wildest. "*Brady* does not exist to provide fodder for misleading reasonable-doubt defenses." *Coe v. Bell*, 161 F.3d 320, 345 n. 4 (6th Cir. 1998) (emphasis omitted). Defendant Jimmy McLain Moore has not shown that evidence of a James Moore heroin distribution charge is material or that it would likely lead to an acquittal if Jimmy McLain Moore were to be retried.

C.  <u>Codefendant Jamie Cook</u>

Next is a June 2018 letter that codefendant Cook sent to the instant defendant's trial attorney. [Doc. 359, Ex. 5].[5] Trial counsel in turn forwarded that letter to the defendant on June 26, 2018, well in advance of his November 2018 trial. [*Id.*]. Therein, Cook claims in part that Officer Graham "false arrested me and forced me into a situation to make a false statement" presumably pertaining to the instant defendant. [*Id.*].[6] Because the defendant and his trial attorney had this letter prior to trial, it is not "new evidence" requiring a new trial. *Barlow*, 693 F.2d at 966.

The defendant also discusses Cook's substance abuse along with his mental and physical health. The Court again notes the strong evidentiary weight of the recorded calls between the defendant and Cook. The defendant has not shown that Cook's personal issues would have caused the jury to reject the damning information that they heard *from the defendant himself* on those calls, such that an acquittal would be likely at retrial.

D.  <u>Defendant's Post-Trial Medical Records and History of Addiction</u>

Lastly, the defendant cites post-trial knowledge he has gained regarding "the long-term effects of methamphetamine use on his body and his mental faculties" which he claims "could have provided support for a diminished capacity defense." However, as pointed out by the United States, the defendant was sufficiently aware of his own drug

---

[5] The defendant's other complaints relating to codefendant Cook have been previously addressed by the Court. [Docs. 388, 390].

[6] The undersigned presided over codefendant Cook's case. That case featured a succession of five defense attorneys and a whiplashing array of shifting positions.

11

abuse at the time of trial. He could have raised a diminished capacity defense had he chosen to do so.

At sentencing, the defendant stated, "I've had a drug problem over the years." [Doc. 260, p. 22]. To the writer of his Presentence Investigation Report, the defendant disclosed a history of polysubstance abuse. [Doc. 223, ¶ 57]. His post-trial evidence is therefore cumulative.

V.

*Conclusion*

As provided herein, the defendant's renewed motion for new trial [doc. 364] is **DENIED**.

    **IT IS SO ORDERED.**

                                                   ENTER:

                                                   s/ Leon Jordan
                                          United States District Judge